**E-FILED**
Wednesday, 15 May, 2013 11:53:46 AM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### Urbana Division

| | |
|---|---|
| **STACY L. CHILDRESS,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 11-1434** |
| **CAROLYN W. COLVIN, Acting Commissioner of Social Security,** | |
| **Defendant.** | |

## REPORT AND RECOMMENDATION

In November 2011, Plaintiff Stacy L. Childress filed a Complaint (#1) against Defendant Carolyn W. Colvin, Acting Commissioner of Social Security,[1] seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). In July 2012, Plaintiff filed Plaintiff's Motion for Summary Judgment (#8). In November 2012, Defendant filed her Motion for an Order Which Affirms the Commissioner's Decision (#12). For the reasons discussed below, the Court recommends, pursuant to its authority under 28 U.S.C. § 636(b)(1)(B), that Plaintiff's Motion for Summary Judgment (**#8**) be **GRANTED**, and that Defendant's Motion for an Order Which Affirms the Commissioner's Decision (**#12**) be **DENIED**.

### I. Background

### A. Procedural Background

In 2008, Plaintiff filed applications for disability insurance benefits (DIB) and supplemental security income (SSI), alleging a disability onset date of November 7,

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin, the Acting Commissioner of Social Security, is substituted for Michael J. Astrue as the defendant in this suit. FED. R. CIV. P. 25(d).

2008.[2]  The Social Security Administration denied his application initially and upon reconsideration.  On August 31, 2010, Administrative Law Judge Diane Flebbe held a hearing at which Plaintiff and vocational expert (VE) Bob Hammond testified.  Plaintiff was represented by counsel.  On November 4, 2010, ALJ Flebbe found that Plaintiff was not disabled and denied his applications for benefits.  The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  Plaintiff now seeks review from this Court pursuant to 42 U.S.C. § 405(g).

## B.  Medical Background

### 1.  Plaintiff's Medical Records

The summary of Plaintiff's medical records presented here is not exhaustive and is merely meant to highlight factual background most relevant to Plaintiff's arguments.

### a.  Dr. Theodore Addai

In March 2007, Dr. Theodore Addai, Plaintiff's treating cardiologist, stated that Plaintiff had congestive heart failure with New York Heart Association Functional Class III, cardiomyopathy with an ejection fraction of 15-20%, severe asthma, and COPD, and therefore Plaintiff was disabled.  (R. 435.)  In July 2007, Plaintiff underwent a nuclear medicine test that demonstrated an ejection fraction of 57% in his left ventricle and an ejection fraction of 45% in his right ventricle.  (R. 514.)  In November 2007, Plaintiff reported occasional chest pain lasting a few seconds, and Dr. Addai observed that Plaintiff had dyspnea on exertion, an exercise tolerance of one and one-half to two blocks, and shortness of breath.  (R. 285, 287.)  Dr. Addai diagnosed congestive heart failure, atypical chest pain, obesity, hypertension, and COPD/asthma.  (R. 287-88.)  He opined that Plaintiff remained in the New York Heart Association Functional Class III. (R. 288.)  Another nuclear medicine test in December 2007 showed a left ventricle ejection fraction of 57% and a right ventricle ejection fraction of 43%.  (R. 290.)  In July

---

[2] Plaintiff had previous filed applications for DIB and SSI in February 2007, alleging a disability onset date of February 23, 2007.  Those applications were denied in November 2008 and Plaintiff did not appeal.

2008, Plaintiff reported occasional chest pain and dyspnea on exertion. (R. 291.) During that visit, Plaintiff complained of some blurred vision, and a review of his systems indicated a chronic cough and excessive thirst. (R. 293.) Dr. Addai diagnosed Plaintiff with chronic heart failure, atypical chest pain, obesity, hypertension, COPD/asthma, and cardiomyopathy, but found that Plaintiff's condition had improved to New York Heart Association Class II. (R. 294.)

In January 2009, after his disability onset date, Dr. Addai noted that Plaintiff had dyspnea on exertion and that walking approximately one block would leave him short of breath. (R. 374.) Plaintiff reported fatigue, blurred vision, and weakness in his extremities, and a review of his systems demonstrated a chronic cough. (R. 375-76.) Plaintiff was taking Advair, Coreg, Diovan, Lanoxin, Lasix, Norvasc, Proventil, and Spiriva at the time. (R. 374-75.) Plaintiff told Dr. Addai that he had run out of medication for one month due to cost issues, but subsequently obtained them all except for Lasix and Benazepril. (R. 374.) Dr. Addai diagnosed congestive heart failure, atypical chest pain, obesity, hypertension, COPD/asthma, and cardiomyopathy. (R. 376.) He found that Plaintiff's condition had worsened again to New York Heart Association Class III and that his blood pressure was suboptimal, but noted that those findings might be a result of Plaintiff running out of medications. (R. 376.)

In April 2009, Plaintiff reported occasional episodes of atypical chest discomfort, dyspnea on exertion, and becoming short of breath after walking half a block. (R. 411.) He complained of recent changes in his vision, shortness of breath, a chronic cough, weakness in the extremities, joint stiffness, and joint pain. (R. 412-13.) Dr. Addai diagnosed Plaintiff with congestive heart failure, atypical chest pain, obesity, hypertension, COPD/asthma, and cardiomyopathy. (R. 413.) He stated that Plaintiff's dyspnea was worsening and he had uncontrolled blood pressure due to noncompliance with medication. (R. 413.) In May 2009, Plaintiff again reported occasional episodes of atypical chest discomfort. (R. 415.) Dr. Addai noted that Plaintiff remained in New York Heart Association Class III, he had adequate heart medication, and his blood pressure control had improved significantly since the last visit. (R. 417.)

At follow-up appointments in September 2009 (R. 418-21) and November 2009 (R. 430-33), Dr. Addai indicated no significant changes other than improved exercise tolerance.  (R. 420, 432-33.)  In November 2009, Dr. Addai administered a treadmill test which indicated that Plaintiff was at the low end of the functional class II exercise capacity.  (R. 519.)  His exercise capacity was 50% of sedentary men his age and 40% of active men his age.  (R. 519.)  Plaintiff was not able to achieve the predicted maximum heart rate for his age group, indicating generally poor exercise tolerance, his response to low level exercise was hypertensive, and the test was terminated because he was visibly exhausted at peak stress of the test.  (R. 519.)

Dr. Addai wrote a brief letter concerning Plaintiff's condition in December 2009, listing Plaintiff's diagnoses and noting that he was disabled.  (R. 436.)  In August 2010, Dr. Addai assessed Plaintiff's functional capacity in a Cardiac Impairment Questionnaire. (R. 507-12.)  He diagnosed Plaintiff with congestive heart failure, cardiomyopathy, and asthma.  (R. 507.)  Clinical findings included shortness of breath and fatigue.  (R. 507.) Dr. Addai referred to attached records of clinical findings to support his assessment.  (R. 508.)  He opined that in an eight-hour day, Plaintiff can only sit for two hours total and stand or walk for a maximum of one hour.  (R. 509.)  He can frequently lift or carry up to five pounds and occasionally lift or carry up to twenty pounds, but never more than that. (R. 510.)  Dr. Addai also opined that Plaintiff's impairments would likely result in good days and bad days, and he estimated that Plaintiff would likely be absent from work more than three times a month.  (R. 510.)  He further noted that Plaintiff should avoid fumes, gases, temperature extremes, humidity, dust, and heights.  (R. 511.)  In addition, any job should require no pushing, pulling, kneeling, bending, or stooping.  (R. 511.)  Dr. Addai stated that these symptoms and limitations had been present since the date of Plaintiff's first treatment.  (R. 511.)

**b.  Dr. Patrick Hartman**

Dr. Hartman, Plaintiff's primary care physician, began treating Plaintiff in October 2009.  (R. 457.)  At that time, Plaintiff complained of coughing, mild nasal

congestion, occasional episodes of possible fever, occasional seizures, and constant headaches.  (R. 457.)  Dr. Hartman diagnosed Plaintiff with acute bronchitis and hypertension.  (R. 457.)  In December 2009, Dr. Hartman saw Plaintiff for a follow-up from Plaintiff's emergency room visit for chest pain and substance abuse, and for his continued upper respiratory illness.  (R. 455.)  Plaintiff reported that the chest pain was gone, he had not used marijuana for four days, and he had decreased cigarette usage since November 2008.  (R. 455.)  He complained of chest congestion and a cough.  (R. 455.)  Dr. Hartman performed a chest x-ray which revealed cardiomegaly, and an EKG which revealed left ventricular hypertrophy with QRS widening, and ST and T-wave abnormality.  (R. 456.)  He diagnosed acute bronchitis, thrush, hypertension, COPD, congestive heart failure, and obesity.  (R. 456.)

In August 2010, Dr. Hartman wrote a letter stating that Plaintiff may require a pacemaker if his ejection fraction drops further, and he might have trouble with jobs requiring exertion or full-time repetitive work.  (R. 449.)  Dr. Hartman completed a Medical Impairment Questionnaire in August 2010.  (R. 440-47.)  He diagnosed congestive heart failure and COPD.  (R. 440.)  Clinical findings included shortness of breath, dyspnea on exertion, coughing, fatigue, and low exercise tolerance.  (R. 440, 441.)  Dr. Hartman referred to results of an echocardiogram and pulmonary function testing to support the diagnoses.  (R. 441.)  Dr. Hartman estimated that Plaintiff's pain was not significant, but rated his fatigue as severe—nine on a ten-point scale.  (R. 441.)  Dr. Hartman opined that during an eight-hour work day, Plaintiff can only sit for three hours and stand or walk for one hour.  He must be able to lie down, and he cannot stand or walk continuously.  (R. 442-43.)  Plaintiff can lift or carry up to twenty pounds occasionally, but never more than that.  (R. 443.)  He has significant limitations in doing repetitive reaching, handling, fingering, or lifting due to dyspnea on exertion and limited exercise tolerance.  (R. 443.)  Plaintiff is also significantly limited in grasping, turning, twisting objects, and using his arms for reaching, and he is minimally limited in using his fingers and hands for fine manipulations.  (R. 443-44.)  Dr. Hartman opined that Plaintiff's symptoms and limitations have been present for at least a year or two, but may have been present for up to five years.  (R. 446.)

Dr. Hartman opined that Plaintiff's symptoms will likely get worse if he is placed in a competitive work environment, and consequently Plaintiff would not be able to work a full-time competitive job that requires sustained activity.  (R. 444-45.)  His pain, fatigue, and other symptoms would frequently interfere with his attention and concentration.  (R. 445.)  Dr. Hartman stated that the symptoms would last at least a year and that Plaintiff's depression would contribute to his symptoms and functional limitations.  (R. 445.)  He opined that Plaintiff can tolerate only low work stress.  (R. 445.)  During an eight-hour work day, Plaintiff would need to take an hour-long unscheduled break every one to two hours.  (R. 445.)  Dr. Hartman stated that Plaintiff is likely to be absent from work more than three times a month due to his impairments.  (R. 446.)  He also stated that Plaintiff's ability to work at a regular job on a sustained basis is limited by psychological limitations and his need to avoid fumes, gases, temperature extremes, dust, pushing, pulling, kneeling, bending, and stooping.  (R. 446.)

In July 2010, Dr. Hartman wrote a letter in which he opined that without consideration of any past or present drug or alcohol abuse, Plaintiff was totally disabled.  (R. 438.)  He did not comment on Plaintiff's functional capacity in this brief letter.  (R. 438.)

## 2.  Plaintiff's Testimony

Plaintiff testified that his symptoms include chest tightness, discomfort, a "pinching" sensation, shortness of breath, and sleep apnea.  (R. 48.)  He stated that if he is on his feet for a long period of time his legs start hurting.  (R. 48.)  He also suffers from chest pains and weakness in his arms and hands due to poor circulation.  (R. 67.)  Plaintiff reported being diagnosed with major depression.  (R. 52.)  He reported loss of interest and loss of appetite, and occasional problems with memory, focus, and concentration.  (R. 53.)  Plaintiff stated that he has about eight cysts on his head and about seven cysts between his thighs.  (R. 46.)  The cysts on his head cause him constant headaches.  (R. 54.)  Plaintiff stated that he can stand for only twenty-five to thirty minutes at a time before his feet start hurting, and he can sit for only forty-five minutes to

an hour.  (R. 56.)  He also testified that he could lift twenty-five pounds if he needed to.
(R. 56.)

Plaintiff testified that his condition has gotten worse since the decision about his
disability was made.  (R. 44-45.)  He stated that his doctor told him to diet and exercise
for at least a half hour a day.  (R. 46.)  He watches what he eats and tries to exercise (R.
46), but he usually tires easily and needs a break about one block after he begins walking.
(R. 69.)  Plaintiff stated that he had not used marijuana for over a month, and had only
used it recreationally before that time.  (R. 43.)  He smokes about half a pack of cigarettes
a day.  (R. 55.)  He also testified that he used to go out with his girlfriend once every
three or four months.  (R. 48.)

Plaintiff testified that he worked as a cook for three months in 2009.  (R. 41.)  He
worked part-time for a total of about twelve hours a week.  (R. 41.)  He testified that the
job required him to be on his feet, but that he did not lift anything heavy because of the
twenty-five pound weight restriction imposed by Dr. Addai.  (R. 42.)  He testified that he
ceased working there because he thought he had a mild heart attack.  (R. 41.)  Plaintiff
also testified that he took care of his girlfriend's six-year-old son for about three to four
hours a day.  (R. 44.)  Plaintiff stated that he would watch movies with the child or watch
him while he played outside.  (R. 44.)

Plaintiff lives with his brother.  On a typical day, Plaintiff gets up, showers, and
watches television for twenty to thirty minutes.  (R. 57.)  He lets his brother's dog out and
goes back to bed for three or four hours.  (R. 57-58.)  After this nap, he might smoke a
cigarette, eat lunch, or watch more television before going back to bed for the night.  (R.
58.)  Plaintiff testified that he is capable of driving, and used to drive his girlfriend to
work in the mornings, but he does not drive anymore because he does not have a vehicle
or money for insurance.  (R. 61.)  His sister drives him to the library once or twice a
month to check his email and Facebook page.  (R. 62.)  However, he testified that most of
his days are inactive.  (R. 68.)

### C.  The ALJ's Decision

Applying the Social Security Administration's five-step sequential evaluation process for determining whether an individual is disabled, ALJ Flebbe determined, at step one, that Plaintiff has not engaged in substantial gainful activity since his alleged disability onset date.  Although Plaintiff took care of his girlfriend's son, he was not paid for that work, and his part-time work as a short-order cook for three months did not rise to the level of substantial gainful activity either.  At step two, ALJ Flebbe determined that Plaintiff has the following severe impairments: congestive heart failure, depression, mild COPD, sebaceous cysts on the head that cause headaches, and obesity.  At step three, ALJ Flebbe determined that Plaintiff's impairments do not meet or medically equal any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

ALJ Flebbe determined that Plaintiff has the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) except he can stand for only twenty-five to thirty minutes at a time and walk only one to two blocks at a time for a total time standing and walking of two hours a day and he can sit for only forty-five to sixty minutes at a time for a total of six hours a day.  The work should require no climbing of ladders, ropes, or scaffolds, no exposure to hazards such as dangerous machinery and unprotected heights, and no exposure to extreme heat.  ALJ Flebbe determined that Plaintiff is able to understand, remember, and carry out work instructions learned within thirty days and perform goal-oriented work but not productivity-paced work.  ALJ Flebbe concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible to the extent his statements were inconsistent with the ALJ's RFC.  ALJ Flebbe did not give significant weight to the degree of limitation assessed by Dr. Addai, nor did he give controlling weight to the degree of limitation assessed by Dr. Hartman.

At steps four and five, ALJ Flebbe relied on vocational expert testimony that Plaintiff could not perform his past relevant work because Plaintiff's past jobs were performed at a medium exertional level, and that work exists in significant numbers in

the national economy that Plaintiff could perform, such as a clerical combination of telephone clerk and document preparation clerk.

## II.  Standard of Review

In reviewing an ALJ's decision, this Court does not try the case *de novo* or replace the ALJ's findings with the Court's own assessment of the evidence.  *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989).  Instead, the Court must affirm the decision to deny benefits if the ALJ correctly applied the law and supported the decision with substantial evidence.  *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011).  The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Stated differently, if reasonable minds could differ as to whether a plaintiff is disabled, the Court must uphold the ALJ's decision to deny benefits.  *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

## III.  Discussion

Plaintiff argues that ALJ Flebbe (1) failed to give proper weight to the opinions of his treating physicians, Dr. Addai and Dr. Hartman; (2) failed to properly evaluate Plaintiff's credibility; and (3) relied upon flawed vocational expert testimony.

### A.  Treating Physician Rule

Plaintiff first argues that the ALJ failed to give proper weight to the opinions of his treating cardiologist, Dr. Addai, or his treating physician, Dr. Hartman.

The ALJ must give controlling weight to a treating source's opinion if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence."  *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) (citing 20 C.F.R. § 404.1527(c)(2)).  An ALJ may decide not to give a treating physician's medical opinion controlling weight "if it is inconsistent with the opinion of a consulting physician, or when the treating physician's opinion is internally inconsistent."  *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004).  Nevertheless, if

an ALJ does not give controlling weight to a treating physician's opinion, she must explain what weight she gives that opinion and provide good reasons for the weight. *See* 20 C.F.R. § 404.1527(d); *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011).  When determining how much weight to give a physician's opinion, the regulations require the ALJ to consider "the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion."  *Id.* at 740 (citing 20 C.F.R. § 404.1527(d)(2)).

**1.  Dr. Theodore Addai**

The ALJ offered two reasons that she did "not give significant weight to the degree of limitation assessed by Dr. Addai [in the Cardiac Impairment Questionnaire] dated August 13, 2010."  (R. 20.)  First, she said that "the doctor's own treatment notes do not reveal such a downturn in the claimant's condition to support no work."  (R. 20.) And second, she described some of Plaintiff's activities and testimony (R. 20-21), apparently presenting this information to show that it was inconsistent with the limitations in the Cardiac Impairment Questionnaire.

Plaintiff argues that the ALJ should have given Dr. Addai's opinions controlling weight or, at the very least, she should provide a sound explanation for rejecting his opinions.  He notes that Dr. Addai based his opinions on clinical and diagnostic evidence of shortness of breath and fatigue, as well as on medical tests including several nuclear medicine tests, and he contends that the ALJ ignored critical medical findings in the record.  Plaintiff also contends that the ALJ did not present any substantial evidence that contradicted Dr. Addai's opinions and did not explain how Dr. Addai's opinions were invalid based on the activities and testimony that the ALJ described.

Defendant responds that the ALJ's explanation was adequate and also states that Dr. Addai did not support his conclusion with clinical findings or a supporting explanation.

Here, the ALJ failed to support her first reason with any reference to specific treatment notes nor did she explain how those treatment notes undermine Dr. Addai's assessment of Plaintiff's limitations.  As a result, the Court is completely unable to evaluate the ALJ's first stated reason.  *See Zblewski v. Astrue,* 302 F. App'x 488, 493 (7th Cir. 2008) (stating that the ALJ must "minimally articulate his reasoning")

> Regarding Plaintiff's activities and testimony, the ALJ first stated that
>
> the evidence reveals that Mr. Childress worked part-time as a cook during the period April through mid September 2009, and he testified that he provided care for his ex-girlfriend's son during the period since January 2007, which was during the time that Dr. Addai considered that the claimant could not push, pull, kneel, bend or stoop or sit, stand and walk more than three hours a day.

R. 20.  Without actually saying so, the ALJ appears to be implying that Plaintiff's two jobs included activities that are inconsistent with the limitations indicated by Dr. Addai regarding pushing, pulling, kneeling, bending, stooping, sitting, standing, and walking.  As an initial matter, the Court should not have to puzzle out the ALJ's reasoning.  *See Ridinger v. Astrue*, 589 F. Supp. 2d 995, 1006 (N.D. Ill. 2008) ("The ALJ's decision cannot leave the weight given to the treating physician's testimony to mere inference.").  Furthermore, the ALJ has not cited any evidence in the record to that indicates Plaintiff's job as a cook or his childcare efforts required activities that were inconsistent with Dr. Addai's assessment.  The fact that an individual has a job does not, by itself, prove that the person is not disabled.  *Henderson v. Barnhart*, 349 F.3d 434, 435 (7th Cir. 2003).  A review of the record shows that when Plaintiff worked as a cook, he worked for only about twelve hours per week.  (R. 41.)  The job required him to be on his feet, but he did not have to stock his own supplies, and he adhered to his lifting restrictions.  (R. 42.)  When he babysat for his ex-girlfriend's son, Plaintiff testified that he would watch a movie with him or watch him while he played outside.  (R. 44.)  Based on this evidence, and in the absence of an explanation or reference to the record by the ALJ, the Court cannot conclude that Plaintiff's limited work as a cook or babysitter was inconsistent with Dr. Addai's opinions.

The ALJ also referred to other testimony and activities by Plaintiff in support of her decision to give "less than significant weight to the degree of limitation assessed by

Dr. Addai."  (R. 20.)  For example, she mentioned Plaintiff's use of marijuana and cigarettes "which would expose the claimant to fumes and gasses" and Plaintiff's claim that he thought he could lift twenty-five pounds if needed, even though his doctor had imposed a twenty-five-pound lifting restriction.  (R. 20.)  The Court notes that the fact that Plaintiff did not comply with his doctor's limitations regarding smoking does not undermine the validity of the doctor's opinion nor does the fact that Plaintiff may be physically able to lift more than the weight to which his doctor has restricted him.  The ALJ also referred to Plaintiff's report on January 21, 2009, that "all he did was stay to himself and watch TV, which [the ALJ stated] implies that he would likely sit more than 2 hours daily to watch TV," and to Plaintiff's statements that he could sit no longer than forty-five to sixty minutes due to cysts on his legs and that, "as recently as 2 months ago, he drove his girlfriend to work each morning, which was 25 miles each way."  (R. 20-21.)  Although the ALJ does not explain her thinking with regard to those statements, the Court notes that the consistency or inconsistency of Plaintiff's testimony does not necessarily undermine the doctor's opinions.

> The Court should not have to infer what the ALJ decided or what her reasoning is.
>
> The ALJ's decision cannot leave the weight given to the treating physician's testimony to mere inference: "the decision must be sufficiently specific to make clear to any subsequent reviewers the weight the ALJ gave to the treating source's medical opinion and the reasons for that weight."

*Ridinger*, 589 F. Supp. 2d at 1006 (quoting *David v. Barnhart,* 446 F. Supp. 2d 860, 871 (N.D. Ill. 2006)).  The ALJ did not cite any specific treatment notes to support her conclusion, nor did she explain how particular evidence that she described undermined the doctor's opinions.  Nor did the ALJ argue that Dr. Addai's opinions were internally inconsistent or inconsistent with a consulting physician's opinion.  The Seventh Circuit court has stated that "an ALJ must not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record."  *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000).  Given the ALJ's lack of an explanation to support her conclusion regarding Dr. Addai's opinions and her failure to support her conclusion with references to the evidence in the record, the Court is unable to assess the ALJ's evaluation of Dr. Addai's opinions.

**2. Dr. Patrick Hartman**

Dr. Hartman completed a medical impairment questionnaire in which he identified a number of limitations on Plaintiff's activities, including sitting for no more than three hours in an eight-hour day, standing/walking for no more than one hour in an eight-hour workday, and lifting/carrying no more than twenty pounds, among other limits. The ALJ evaluated the doctor's opinions as follows:

> The undersigned does not grant controlling weight to the degree of limitations assess[ed] by Dr. Hartman . . . as they are not consistent with the medical record as a whole. For example, the claimant indicated that he could lift 25 pounds. Additionally, the claimant's actual activities as previously noted do not support the [(*sic*)] such stringent restrictions as given by Dr. Hartman.

(R. 27.) Earlier in her decision, the ALJ described the evidence regarding Plaintiff's appointments with Dr. Hartman. However, the three sentences quoted above comprise the ALJ's entire explanation of her assessment of Dr. Hartman's opinions regarding Plaintiff's limitations.

Plaintiff argues that the ALJ improperly rejected Dr. Hartman's opinions. He contends that the ALJ relied too heavily on evidence relating to Plaintiff's daily activities. *See Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009) (finding that the ALJ erred by placing undue weight on the claimant's activities when assessing her ability to work outside the home). In addition, he notes that the ALJ did not cite to any medical evidence to support the RFC, instead relying on her own lay opinions regarding the medical record. Finally, Plaintiff contends that even if Dr. Hartman's opinions did not merit controlling weight, the ALJ failed to provide a sound explanation for rejecting them.

The Commissioner responds that the ALJ's explanation was adequate, noting that Dr. Hartman's specific limitations were inconsistent with the evidence in the medical record and Plaintiff's activities. The Commissioner also stated that the medical opinions were not supported with clinical findings or explanations about why Plaintiff was not able to work.

As with the ALJ's treatment of Dr. Addai's opinions, here also the ALJ did not refer to the record to explain why she thought Dr. Hartman's limitations were "not consistent with the medical record as a whole" (R. 27), nor does she explain which of Plaintiff's activities she relied on when concluding that those activities do not support Dr. Hartman's restrictions.  As noted above, the Court should not have to infer the ALJ's reasoning.  Nor can the ALJ rely on her own lay opinion of Plaintiff's limitations.  *See Clifford*, 227 F.3d at 870.  Here, the ALJ did not contend that Dr. Hartman's opinions were inconsistent with another physician's opinion, nor did she argue that his opinion was internally inconsistent.  *See Boiles v. Barnhart,* 395 F.3d 421, 425-27 (7th Cir. 2005) (remanding where the ALJ's rejection of the treating physician's opinion "did not explain how other evidence in the record contradicted [the treating source]'s opinion").

An ALJ's decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  20 C.F.R. § 404.1527(d)(2).  Here, the ALJ's failure to articulate her reasons for rejecting the opinions of Drs. Addai and Hartman, to support those reasons with reference to the evidence, and to present medical evidence to support her reasons, makes review of the ALJ's decision nearly impossible.  Remand for reconsideration is appropriate where further explanation might clarify the ALJ's rationale.  *Pratts v. Chater,* 94 F.3d 34, 39 (2d Cir.1996).  Accordingly, the Court recommends remanding this case for reconsideration of the opinions of Dr. Addai and Dr. Hartman.

### B.  Plaintiff's Credibility

Plaintiff next argues that the ALJ failed to properly evaluate Plaintiff's credibility when she stated that Plaintiff's complaints and symptoms were inconsistent with the ALJ's RFC.

The ALJ must follow a two-step process when evaluating Plaintiff's symptoms and credibility.  The ALJ must first consider whether the claimant has a medically-determined impairment and whether the impairment could reasonably be expected to

produce the claimant's subjective complaints of pain.  SSR 96-7p; 20 C.F.R. §
404.1529(c)(1).  Once that is demonstrated, the ALJ must evaluate the intensity,
persistence, and limiting effects of the claimant's symptoms to determine the extent to
which they limit the claimant's functioning.  *Id.*  A claimant must provide credible
testimony and objective evidence to qualify for disability benefits.  *Moothart v. Bowen*,
934 F.2d 114, 117 (7th Cir. 1991).  The Court gives the ALJ's credibility determination
considerable deference, and will overturn it only when it is "patently wrong."  *Prochaska
v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (citing *Carradine v. Barnhart,* 360 F.3d
751, 758 (7th Cir. 2004)).

The ALJ stated that Plaintiff's statements concerning his symptoms were "not
credible to the extent they [were] inconsistent with the . . . residual functional capacity
assessment."  (R. 26.)  The ALJ went on to describe some of Plaintiff's activities,
including driving a motor vehicle, using a computer, providing care for his ex-girlfriend's
young child and working part-time as a cook from April through September 2009.  The
ALJ stated that these activities "indicate that the claimant has the ability to sit, stand,
walk, lift and carry, albeit at a limited capacity."  (R. 26.)  Referring to Plaintiff's
previous smoking of marijuana and current smoking of about one-half pack of cigarettes
daily, the ALJ also stated:

> Not only is this contrary to medical advice but contrasts with the claimant's
> complaints at time [(*sic*)] that he did not have money for his medications.  The
> degree of limitation and pain alleged by the claimant is not consistent with the
> medical record as a whole or the claimant's reported activities.

R. 26.

Plaintiff argues that the ALJ applied the wrong legal standard when she evaluated
his credibility based on the ALJ's own RFC.  He also contends that the ALJ's discussion
of Plaintiff's activities does not support the conclusion that Plaintiff's testimony is not
credible and that the ALJ's credibility assessment is patently wrong.

The Commissioner argues that, although the Seventh Circuit has criticized
boilerplate language similar to the language the ALJ used here (*see Richison v. Astrue*,

426 F. App'x 622, 625 (7th Cir. 2012) ("We have derided this sort of boilerplate as inadequate, by itself, to support a credibility finding.")), it has recently clarified that the use of such language is not fatal as long as the ALJ also explains his reasons.  *See id.* at 625-26 ("By explaining which of Richison's statements he did not credit and why, the ALJ provided a sufficient basis for his credibility assessment.").

To support the determination that Plaintiff's complaints were inconsistent with his condition and therefore not credible, the ALJ stated that Plaintiff "has engaged in significant activities despite his mental and physical health problems." (R. 26.)  The ALJ referred specifically to Plaintiff's ability to drive, use a computer, provide care for his ex-girlfriend's child, and work as a part-time cook for a limited time, and to his smoking habit.  However, minimal daily activities "do not establish that a person is capable of engaging in substantial physical activity."  *Clifford*, 227 F.3d at 872.  Plaintiff drove his ex-girlfriend to and from work, which took twenty-five minutes each way.  (R. 61.)  Plaintiff went to the library once or twice a month to use the computer and when he did so, someone else drove him there.  (R. 62.)  He babysat for a young child, but as mentioned above, Plaintiff either watched movies with him or watched him while he played for about three to four hours a day.  (R. 44.)  Plaintiff tried to take daily walks, as recommended by his doctor (R. 45), but could walk only a block or two.  (R.48).  The ALJ does not explain how Plaintiff's participation in these activities undermines Plaintiff's credibility.

The ALJ's discussion is not adequate to apprise the Court of her reasons for concluding that Plaintiff was not credible.  Accordingly, on remand, the ALJ should reconsider the issue of Plaintiff's credibility and fully explain her reasoning.

### C.  Vocational Expert Testimony

Plaintiff also argues that the ALJ relied upon flawed vocational expert testimony because the RFC described to the vocational expert was not supported by substantial evidence and did not accurately describe Plaintiff's mental limitations.  Because the RFC may change after remand, the Court will not address this issue now.

### IV.  Summary

Accordingly, the Court recommends that Plaintiff's Motion for Summary Judgment **(#8)** be **GRANTED**, that Defendant's Motion for an Order Which Affirms the Commissioner's Decision **(#12)** be **DENIED**, and that this case be remanded pursuant to 42 U.S.C. § 405(g) for further proceedings consistent with this Report and Recommendation.

The parties are advised that any objection to this recommendation must be filed in writing with the clerk within fourteen days after being served with a copy of this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1).  Failure to object will constitute a waiver of objections on appeal.  *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTERED this 15th day of May, 2013.

_____ s/DAVID G. BERNTHAL_____
UNITED STATES MAGISTRATE JUDGE